# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**CURTIS FRANCIS ET AL**               **CASE NO.  6:21-CV-02052**

**VERSUS**                             **JUDGE TERRY A. DOUGHTY**

**TRENT MOUTON ET AL**                 **MAGISTRATE JUDGE WHITEHURST**

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 36] filed by Defendants Lafayette City-Parish Consolidated Government ("LCG") and Officer Trent Mouton ("Officer Mouton"), Individually and in his Official Capacity as a Police Officer (collectively, "Defendants"). Curtis Francis ("Francis") and Markia Morrison ("Morrison") (collectively "Plaintiffs") filed an Opposition[1] [Doc. No. 43], and Defendants filed a Reply [Doc. No. 45].

For the reasons stated below, Defendants' Motion is **GRANTED.**

## I.    FACTS AND PROCEDURAL HISTORY

This lawsuit arises from an incident that occurred on July 15, 2020.[2] Officer Mouton, a police officer for LCG, was on patrol the date of the incident.[3] Lafayette Police Department Communications ("LPD Communications") received information

---

[1] The Plaintiffs' Opposition, which spans less than two pages, fails to address several of the claims raised in Defendants' Motion. In fact, the only claim the Court can clearly identify as being addressed is Francis' excessive force claim. To the extent that the Court is able to discern any additional arguments, it will address them to the best of its ability. However, any claims not specifically mentioned are deemed waived. *See Landmark American Insurance Company v. Esters*, No. 2:20-cv-1263, 2025 WL 1783718 at *3 (W.D. La. Feb. 14, 2025).

[2] [Doc. No. 1, ¶ 5].

[3] [Id.].

about Francis' location from an anonymous individual, provided through a Crime Stoppers tip.[4] The caller informed LPD Communications that he or she was following a wanted suspect, specifically Francis.[5] The caller asserted that Francis was riding as a passenger in a white car and gave the license plate tags.[6] Moments later, the call for service was dispatched, with the dispatcher informing officers that Francis was wanted on two counts of attempted first-degree murder.[7] The anonymous caller was then put in contact with Detective Mike Boutte ("Det. Boutte"), who transmitted the location of the suspect to officers nearby.[8] At that point, officers were notified that Francis was actually wanted for four counts of attempted first-degree murder and three counts of assault by drive-by shooting.[9] LPD Communications advised officers that Francis had fled from the vehicle and was running across Pont Des Mouton Road, a four-lane highway.[10] Moments later, officers on the scene reported that shots had been fired, and that Francis was being held at gunpoint.[11] Because Francis was shot, an ambulance was called.[12]

On July 15, 2020, Officer Mouton was on his way to Lafayette Police Department ("LPD") in his marked unit to retrieve his body camera.[13] Since it was the start of his shift, his body camera was docked at LPD during his days off—a

---

[4] [Doc. No. 46, p. 18].
[5] [Id.].
[6] [Id.].
[7] [Id.].
[8] [Id.].
[9] [Id.].
[10] [Id.].
[11] [Id.].
[12] [Id.].
[13] [Doc. No. 36-5, Exhibit B, Interview of Trent Bouton].

standard practice to allow for footage review.[14] While en route to LPD, however, Mouton was radioed for nearby officers to respond and assist other officers who were on their way to detain Francis.[15] Instead of retrieving his body camera, Officer Mouton chose to assist the other officers.[16] Corporal Segus Jolivette ("Cpl. Jolivette") was one of the officers intending to initiate the stop on Francis.[17] As the car was stopping, however, Francis jumped out of the passenger side and fled on foot.[18] Cpl. Jolivette informed other officers via radio that Francis had fled the vehicle and provided his physical description.[19] Officer Mouton, who was in close proximity to Francis' location, initiated a foot pursuit. Officer Mouton issued two verbal commands for him to stop, but both were ignored.[20]

Officer Mouton then retrieved his taser with his left hand and aimed it at Francis' back.[21] Francis then entered the driveway of 103 St. Bernadette Drive, with Officer Mouton approximately seven to ten yards away.[22] Officer Mouton deployed his taser; however, it was without effect.[23] Officer Mouton testified that at this point, he saw Francis "clenching a Glock handgun in his right hand, with Francis swinging his right hand from his rear to his front as he was turning around to face [him]."[24] Officer Mouton dropped the taser from his left hand, raised his firearm, and fired

---

[14] [Id.].
[15] [Id.].
[16] [Id.].
[17] [Id.].
[18] [Id.].
[19] [Id.].
[20] [Id.].
[21] [Id.].
[22] [Id.].
[23] [Id.].
[24] [Id.; Doc. No. 36-1, pp. 14–15].

three rounds towards Francis' back left side.[25] Surveillance footage shows that Francis was running from Officer Mouton with a firearm in his hand.[26] Officer Mouton witnessed the gun drop from Francis' hand as he collapsed.[27] Francis then complied with commands to put his hands behind his back.[28] Soon thereafter, Francis was provided with first aid treatment until the ambulance arrived on the scene.[29] Specifically, officers reassured Francis that he was going to be okay, encouraged him to breathe, wrapped gauze around his wounds, applied chest seals, and removed his handcuffs while repeatedly calling for the ambulance to arrive quickly.[30]

Morrison drove the vehicle that officers stopped based on information indicating that Francis was inside.[31] Video evidence shows that Cpl. Jolivette witnessed Francis fleeing from the vehicle and chased him with his firearm drawn, but Francis escaped through a fence.[32] Once Francis was out of sight, Cpl. Jolivette, with his gun still drawn, turned around to the car and instructed Morrison to turn the car off.[33] Morrison complied and informed Cpl. Jolivette that her kids were in the car.[34] Cpl. Jolivette withdrew his gun and asked for her driver's license.[35] At that point, however, Cpl. Jolivette was radioed that Francis was running across a highway

---

[25] [Id.].
[26] [Doc. No. 36-5, Exhibit B, Att. 6, Surveillance Video Capture].
[27] [Id.].
[28] [Id.].
[29] [Doc. No. 36-5, Exhibit B, Att. 18, Segus Body Cam & Segus Jovlivette].
[30] [Id.].
[31] [Id.].
[32] [Id.].
[33] [Id.].
[34] [Id.].
[35] [Id.].

near his location, so he left Morrison and began to run to the scene.[36] It is the Court's understanding that Morrison and the children walked without restraint to the location of the incident.[37] However, Morrison was brought into the station for a thirteen-minute interview.[38] Morrison was detained for approximately two hours before being released.[39]

Plaintiffs sued Defendants under the Fifth, Eighth, and Fourteenth Amendments, false arrest and imprisonment, excessive force, and various negligence claims under state law.[40] On June 24, 2025, Defendants sought Summary Judgment alleging that all of Plaintiffs' claims should be dismissed as they are unfounded as a matter of law.[41] Plaintiffs submitted a brief Opposition, relying solely on Francis' affidavit.[42]

The issues have been briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A. Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine

---

[36] [Id.].
[37] [Doc. No. 36-5, Exhibit B, Att. 18, Mike Millazzo].
[38] [Doc. No. 46, p. 13].
[39] [Id.].
[40] [Doc. No. 1].
[41] [Doc. No. 36].
[42] [Doc. No. 42, p. 1].

issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (citation modified). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (citation modified).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation modified). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### B. Fifth, Eighth, Fourteenth, and Fourth Amendment Claims

#### 1. *Fifth Amendment*

Plaintiffs' Complaint states that Defendants violated their Fifth Amendment.[43] Defendants assert that Plaintiffs do not have a viable cause of action under the Fifth Amendment because the Fifth Amendment applies only to federal actors.[44] The Opposition offers no law or argument on this matter.

"The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor." *Ristow v. Hansen*, 719 F. App'x. 359, 364 (5th Cir. 2018) (quoting *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). *See also Davis v. Negi*, No. 10-800, 2012 WL 1015248 at *2 (W.D. La. March 23, 2012) (holding "[t]he Fifth Amendment provides due process protection for the bodily integrity of citizens from harm imposed by federal actors").

Plaintiffs do not claim that any of the officers are federal actors; in fact, Plaintiffs seemingly concede that the officers are employees of the LPD. Because the officers are not federal actors, Plaintiffs' claims that Defendants violated their Fifth Amendment due process rights cannot survive the Motion for Summary Judgment. Thus, Defendants' Motion on the Fifth Amendment claim is **GRANTED**.

---

[43] [Doc. No. 1, p. 2].
[44] [Doc. No. 36-1, p. 20].

2.  *Eighth and Fourteenth Amendment (Medical Needs)*

Paragraph one of Plaintiffs' Complaint cites to the Eighth Amendment, which "protects against cruel and unusual punishment."[45] Plaintiffs only other reference to the Eighth Amendment is found in paragraph 12 and claims the Plaintiffs "were deprived of their rights secured by the Eighth Amendment subjecting the Plaintiffs to excessive force and unlawful arrest; and acting with deliberate indifference to Plaintiffs' needs."[46]

The Court agrees with Defendants that Plaintiffs fail to properly plead allegations that they were subject to cruel and unusual punishment and denied medical treatment/care as a pretrial detainee and/or convicted prisoner. The Complaint merely cites the Eighth Amendment but lacks any facts to support the viability of the claim. In any event, "[u]nder the due process clause of the Fourteenth Amendment, detainees have a constitutional right to safe conditions of confinement and adequate medical care. Convicts, on the other hand, are guaranteed safe conditions and adequate medical care pursuant to the Eighth Amendment's prohibition of cruel and unusual punishment." *Wiltz v. Neustrom*, No. 13-2644, 2014 WL 250337 at *2 (W.D. La. Jan. 22, 2014); *see Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000) ("Unlike convicted prisoners, whose rights to constitutional essentials like medical care and safety are guaranteed by the Eight[h] Amendment, pretrial detainees look to the procedural and substantive due process guarantees of the Fourteenth Amendment to ensure provision of these same basic

---

45 [Doc. No. 1, ¶ 1].
46 [Id. at ¶ 12].

needs" (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Regarding medical care claims, both detainees and convicts, in order to establish a constitutional violation, must show that the offending state officials acted with deliberate indifference to their serious medical needs. *Estate of Bonilla by and through Bonilla v. Orange County, Tex.*, 982 F.2d 298, 305 (5th Cir. 2020).

In this case, Francis was not convicted of the offense for which he was being sought after. Thus, the case arises under the Fourteenth Amendment—pretrial detainee. At any rate, deliberate indifference means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 458–59 (5th Cir. 2001). Thus, "... the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). "A showing of deliberate indifference requires the prisoner to submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any

similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino*, 239 F.3d at 756). The standard for establishing deliberate indifference is exceedingly high. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

With respect to the claims of deliberate indifference to medical care, the facts presented in Defendants' Motion and accompanying exhibits indicate that Francis received prompt medical attention while awaiting the arrival of the ambulance. Previously, the Fifth Circuit held that an officer plausibly violated clearly established law where he "stood by for six minutes without performing any medical care or calling for medical backup, aware that he had shot [the decedent] several times and witnessed him crash into a tree, and after he had radioed for police backup for himself." *Allen v. Hays*, 65 F.4th 736, 746 (5th Cir. 2023).

In contrast, the evidence shows that by the time the ambulance arrived, Francis' leg had already been wrapped with gauze, an ace bandage had been applied, and chest seals had been placed on his upper back.[47] Review of body camera footage shows that Defendants consistently instructed Francis to breathe and remained with him, providing care from the time of the injury until the ambulance took over.[48] And Plaintiffs do not contest anything to the contrary in their Opposition. Accordingly, to the extent Plaintiffs make a claim for deliberate indifference to medical needs or treatment under the Eighth and/or Fourteenth Amendment, the Motion for Summary Judgment is **GRANTED**.

---

[47] [Doc. No. 36-5, Ex. B, Segus Body Cam].
[48] [Id.].

### 3. Fourteenth Amendment- Excessive Force

The Court observes that, "all claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment." *Tyson v. Sabine*, 42 F.4th 508, 515 (5th Cir. 2022) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Therefore, "a due process claim is viable only when the alleged misconduct is not susceptible to proper analysis under the Fourth Amendment." *Estate of Parker v. Mississippi Dep't of Pub. Safety*, 140 F.4th 226, 244 (5th Cir. 2025) (citation and internal quotation marks omitted). Because the parties herein seemingly do not dispute that a seizure occurred, the Fourth Amendment governs, thereby foreclosing Plaintiffs' Fourteenth Amendment substantive due process claim. *Id.*; *see also Lewis v. Huval*, No. 16-1280, 2020 WL 2544811, at *10 (W.D. La. May 4, 2020), *R&R adopted*, 2020 WL 2551032 (W.D. La. May 19, 2020) (plaintiff's claim is governed by the Fourth Amendment; therefore, his substantive due process claim fails as a matter of law).

Thus, to the extent Plaintiffs assert an excessive force claim under the Fourteenth Amendment, Defendants' Motion for Summary Judgment is **GRANTED**. However, Plaintiff's excessive force claims under the Fourth Amendment will be discussed below.

### 4. Fourth Amendment

Francis contends that no evidence presented by Defendants shows that he pointed a gun at Officer Mouton to establish a reasonable fear of safety.[49] Francis also states in his affidavit that he was "surrendering" when he was shot.[50] Defendants assert that, to the latter, Francis pled guilty to the amended charge of resisting an officer.[51] In any event, Defendants state that there is ample evidence that Officer Mouton's actions were "objectively reasonable and Francis' assertions to the contrary are irrelevant to the Court's analysis, do not establish a genuine issue of material fact for trial, and/or not supported by the evidence."[52]

The Fourth Amendment guarantees the "right of the people to be secure ... against unreasonable ... seizures." U.S. Const. amend. IV. To state a Fourth Amendment excessive-force claim, a plaintiff must show two things: (1) a seizure occurred; and (2) the force used was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989). A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (quoting *Brower*, 489 U.S. at 596–97). Because Officer Mouton shot Francis, a seizure occurred, and this Court proceeds to consider whether the use of force was reasonable.

An officer's use of force is unreasonable under the Fourth Amendment if the plaintiff shows: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly

---

[49] [Doc. No. 42-2].
[50] [Id].
[51] [Doc. No. 36-10, p. 35].
[52] [Doc. No. 36-1, p. 39].

unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)). There is no dispute that Francis was shot near his back left side. Thus, Francis plainly satisfies the injury element. The Court, therefore, focuses on the second and third elements, which "collapse into a single objective-reasonableness inquiry." *Estate of Parker*, 140 F.4th at 239 (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018)).

In *Graham v. Connor*, the Supreme Court provided the following factors to assess whether the force used was reasonable: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. 386, 396 (1989). "This analysis considers factors such as the time officers had to make decisions, whether the force used is 'measured and ascending' in accordance with the suspect's aggression, whether the suspect signaled that he was armed, and whether he moved toward or away from law enforcement." *Estate of Parker*, 140 F.4th at 239. Reasonableness is assessed from the perspective of a reasonable officer on the scene. *Graham*, 490 U.S. at 396.

Under these standards, this Court concludes that it was objectively reasonable for Officer Mouton to use lethal force on Francis. Beginning with the first *Graham* factor, Officer Mouton was pursuing Francis because he was a fugitive with active warrants for violent felonies—including four counts of attempted first-degree murder and three counts of assault by drive-by shooting. Both offenses are grave and violent and this factor weighs in favor of Officer Mouton. Second—"and most critical in a

deadly force case"[53]—Francis posed a clear and immediate threat to the safety of officers and the surrounding public. Francis repeatedly refused to obey lawful commands. Upon recognizing that officers would intercept the vehicle he was inside of, Francis proceeded to flee on foot, traversing privacy shrubs, passing through a residential neighborhood, and running across a four-lane highway. This act of fleeing on foot through a populated area and across a highway posed a significant safety risk to the residents within the neighborhood and cars passing through. Francis could have, in seconds, turned the weapon on residents or passing vehicles. Upon commencement of the foot pursuit, Francis again refused to comply with lawful commands issued by Officer Mouton. Officer Mouton possessed a reasonable belief that Francis was armed, as evidenced by Officer Mouton's prior knowledge of Francis' characteristics and that Cpl. Segus witnessed Francis jump out of the car with a firearm just moments before. Moreover, surveillance pictures clearly show that Francis was holding a firearm and Francis' argument that he never pointed the gun at Officer Mouton fails. The Fifth Circuit has never "required officers to wait until a defendant turns toward them, with weapon in hand, before applying deadly force to ensure their safety." *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279, n.6 (5th Cir. 2016). By the same token, " … an officer cannot escape liability any time he claims he saw a gun." *Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023).

---

[53] *Estate of Parker*, 140 F.4th at 240 (citing *Singleton v. Casanova*, No. 22-50327, 2024 WL 2891900, at *12 n.17 ("When an officer uses deadly force, the second Graham factor is 'generally the most important.'" (quotations omitted))).

Nevertheless, after employing less intrusive measures, including the deployment of a taser, Francis began to turn toward Officer Mouton while holding the firearm the moment Officer Mouton discharged his firearm. It is undisputed that Francis was not directly pointing his firearm at Officer Mouton at the moment of discharge; however, this fact alone does not, on its face, invalidate the claims related to this point. *See Ratliff v. Aransas Cty.*, 948 F.3d 281, 288–89 (5th Cir. 2020) (holding that the Court accepts that the gun's direction is disputed, but that fact is not material here. After Ratliff ignored repeated commands to disarm, the deputies had ample reason to fear for their safety.) Third, it is undisputed that Francis was actively evading arrest—fleeing from law enforcement and refusing to stop upon lawful command. Thus, all factors weigh in Officer Mouton's favor that his use of force was reasonable.

Outside the *Graham* factors, though, the Supreme Court also considers whether Officer Mouton "created the danger necessitating deadly force." *Barnes v. Felix*, 145 S. Ct. 1358, 1360 (2025). In this case, Francis initiated the danger by refusing to comply with a lawful order to stop and by possessing a firearm while fleeing. His actions directly led to the circumstances that prompted Officer Mouton to use deadly force. Further, courts look to *how quickly* the officer resorts to force, and how close they are to the threat when doing so. *Estate of Parker*, 140 F.4th at 241. Here, Officer Mouton's use of lethal force was not the first means of resistance. Initially, before Officer Mouton arrived on the scene, body camera footage shows that Francis fled from Cpl. Jolivette without stopping. Officer Mouton, being the closest

unit, engaged in pursuit. When verbal commands failed to gain compliance, Officer Mouton deployed his taser, but it was also ineffective in stopping Francis. It was only when Francis closed the distance to within ten feet and began turning towards him with a firearm in hand did Officer Mouton resort to using deadly force.

Considering all the above and that the Court is rightly hesitant to "second-guess[] a police officer's assessment, made on the scene, of the danger presented by a particular situation" from the calm remove of chambers, *Estate of Parker*, 140 F.4th at 239 (quoting *Roque v. Harvel*, 993 F.3d 325, 333 (5th Cir. 2021) (cleaned up), the Court believes that Officer Mouton's use of force was objectively reasonable. Therefore, Defendants' Motion seeking to dismiss Plaintiff's claim of excessive force under the Fourth Amendment is **GRANTED**.

At any rate, even assuming a constitutional violation, Officer Mouton is entitled to qualified immunity. To overcome the affirmative defense of qualified immunity, a plaintiff must show that the government official violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity shields from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" *Ontiveros v. City of Rosenburg*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991)). "[W]hile plaintiffs need not identify 'a case directly on point'

in order to show the law was clearly established, they must provide 'authority at a sufficiently high level of specificity' to put law enforcement officers on notice that such conduct 'is definitively unlawful.'" *Estate of Parker*, 140 F.4th at 242 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). A right is clearly established if, in light of preexisting law, the unlawfulness of an action would be apparent to a reasonable officer. *Manis v. Lawson*, 585 F.3d 839, 846 (5th Cir. 2009).

The question is whether, under the law in effect when Officer Mouton shot Francis, no reasonable officer could have believed that using deadly force was lawful when a suspect ignored commands to stop and show his hands, moved his hands out of view, and appeared to have a weapon. In *Salazar-Limon,* 826 F.3d at 279, the Fifth Circuit upheld the qualified immunity defense, finding that it was not unreasonable for an officer in the defendant's position to interpret Salazar's behavior—which involved resistance, intoxication, failure to comply with commands, and reaching toward his waistband—as posing an immediate threat to the officer's safety.[54] Francis' behavior closely resembled that of Salazar. He disregarded multiple commands to cease his actions and, upon recognizing the failure of Officer Mouton's taser, turned toward the officer while armed. This is further substantiated by the assertion that Francis retained possession of the firearm at the time he was shot.

Because this Court has determined that Officer Mouton's actions satisfied the Fourth Amendment's reasonableness standard, and because the Plaintiff has offered

---

[54] The Fifth Circuit added, "[f]urthermore, … in the context of this case, it is immaterial whether Salazar turned left, right, or at all before being shot. Specifically, we have never required officers to wait until a defendant turns toward them, with weapon in hand, before applying deadly force to ensure their safety." *Salazar-Limon*, 826 F.3d at 279, n.6. (5th Cir. 2016).

neither legal authority nor any allegations to challenge Officer Mouton's qualified immunity defense, Defendants' Motion regarding qualified immunity is **GRANTED**.

### C. Monell Claim(s)

Although not entirely clear, the Court presumes that, as stated in the Complaint, Plaintiffs are also asserting a *Monell* claim against LCG. "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "'[I]t is well established that there must be an underlying constitutional violation for there to be a claim under *Monell*.'" *Landry v. Laborde-Lahoz*, 852 F. App'x 123, 127 (5th Cir. 2021) (quoting *Taite v. City of Fort Worth Texas*, 681 F. App'x 307, 309 (5th Cir. 2017)). But no constitutional violation took place here. *Supra* II(B). Therefore, to the extent that Plaintiffs assert a *Monell* claim, it fails due to the absence of an underlying constitutional violation.

### D. Probable Cause, False Imprisonment, and Arrest Claims

In the Complaint, Morrison states that LPD and Officer Doe unlawfully arrested her without probable cause and falsely imprisoned her for approximately two hours.[55] Defendants contend that Officer Doe has been dismissed and LCG, as the only named defendant pertaining to this matter, should be dismissed as well because there is no *Monell* proof of unlawful policy, custom, or practice.[56] Alternatively, Defendants contend that even if Morrison's detention is considered a

---

[55] [Doc. No. 1, ¶ 5].
[56] [Doc. No. 36-1, p. 26].

*de facto* arrest under the Fourth Amendment, the officers had probable cause to detain her for questioning because Morrison was the driver of the car that had been involved in a drive-by shooting weeks earlier, and the car that Francis was riding in during the pursuit. Alternatively, Defendants argue that at the time of the stop, the car—driven by Morrison and occupied by Francis, along with his drugs and firearm—also carried young children. In rebuttal, Morrison fails to address Defendants' arguments regarding dismissal of her claims.

Defendants are correct that Officer Doe has been dismissed, and the deadline to join other parties or file a motion for leave to amend was November 29, 2024.[57] Defendants are also correct that Morrison offers no argument or evidence as to her claims in the Opposition brief. Plaintiffs provide a sentence in the statement of contested facts that Morrison was restrained to suppress the transparency of a police force involved shooting. Nowhere, however, in the short brief does Morrison offer an argument or evidence as to this alleged fact. The failure to raise an argument in opposition to summary judgment on this claim equates to waiver. *Landmark American Insurance Company v. Esters*, No. 2:20-cv-1263, 2025 WL 1783718 at *3 (W.D. La. Feb. 14, 2025); *Fletcher v. Whittington*, No. 18-cv-1153, 2022 WL 3643513 at *10 (W.D. La. Aug. 23, 2022); *Indep. Coca–Cola Employees' Union of Lake Charles, No. 1060 v. Coca–Cola Bottling Co. United, Inc.*, 114 F. App'x 137, 143–44 (5th Cir. 2004) (unpublished) (holding that a party's failure to raise an argument in opposition to summary judgment waived the argument). Moreover, "[r]ule 56 does not impose

---

[57] [Doc. Nos. 29, 33].

upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (internal quotations omitted).

Because Morrison fails to present any evidence or offer a substantive argument in Opposition to the Motion, she has not met her burden to demonstrate a genuine issue of material fact. Thus, Summary Judgment in favor of Defendants is **GRANTED** as to Morrison's claims.

### E. Louisiana State Law Claims

Plaintiffs assert state law claims of excessive force pursuant to Louisiana Constitution, Article 1 § 20, assault, battery, "police negligence," failure to train or "otherwise act to ensure" that officers "acted appropriately," and negligent hiring, supervision, and retention.[58]

#### 1. *Excessive force, assault, and battery*

In *Jones v. City of Shreveport*, No. 17-0298, 2018 WL 4088789 at * 11 (W.D. La. Aug. 24, 2018), this Court held that "[i]t is well settled that Louisiana employs the same standards in analyzing claims of excessive force as federal law, namely, whether the officer's actions were "reasonable" under the circumstances. *See Reneau of City of New Orleans*, No. 03-1410, 2004 WL 1497711, *4 (E.D. La. July 2, 2004), *overruled on other grounds,* (citing *Kyle v. City of New Orleans*, 353 So.2d 969, 973 (La. 1977)); *Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 323 (La. 1994).

---

[58] [Doc. 1, ¶¶12–29].

Therefore, because the Court granted Defendants' Motion for Summary Judgment as to Francis' excessive force claim, Defendants' Motion for Summary Judgment is also **GRANTED** as to Francis' state law excessive force claims.

Furthermore, assault and battery claims under Louisiana law involve similar elements to excessive force claims. *See Penn v. St. Tammany Parish Sheriff's Office*, 843 So.2d 1157, 1161 (La. Ct. App. 2003) (excessive force elements); *Caudle v. Betts*, 512 So.2d 389 (La. 1987) (assault and battery elements). Because these claims are similar to the excessive force claim, Defendants' Motion for Summary Judgment as to Francis' assault and battery claims against Officer Mouton is **GRANTED**.

2. *Statutory immunity for Plaintiffs' negligence claims*

Defendants assert that they are entitled to statutory immunity pursuant to La. R.S. 2793.11, which became effective April 29, 2024. It states in part:

I. As used in this Section:

(1) "Discretionary function" means any action or conduct of a peace officer, acting within the course and scope of his law enforcement duties, that includes exercising judgment in the enforcement of the criminal laws of the state including but not limited to arresting or attempting to arrest persons or carrying out any other duties or obligations imposed upon a peace officer in this state.

(2) "Peace officer" shall include all individuals as defined in R.S. 40:2402(3) and R.S. 14:112.4(B)(2).

(3) "Public entity" means the state or a political subdivision of the state that employs or appoints any peace officer as defined in this Subsection.

II. A civil claim for damages against a peace officer or public entity that employs or appoints a peace officer shall be prohibited in any of the following circumstances:

21

(1) The conduct or actions of the peace officer arise out of the performance of any discretionary function within the course and scope of the peace officer's law enforcement duties.

(2) The success of the claim necessarily implies the invalidity of a criminal conviction or sentence, unless the conviction or sentence has been invalidated through appropriate legal proceedings.

III. The provisions of Subsection B of this Section shall not apply to any of the following:

(1) Any act or omission of a peace officer which constitutes criminal, fraudulent, or intentional misconduct

As articulated throughout this Ruling, the Court concludes that Officer Mouton's conduct was objectively reasonable given the totality of the circumstances. His actions cannot be characterized as criminal, fraudulent, or intentionally wrongful. Officer Mouton faced a situation in which he reasonably feared for both his safety and the safety of others present. Prior to discharging his firearm, he made efforts to employ less-lethal options—such as the deployment of a taser—in an attempt to gain compliance from Francis. The escalation to deadly force came only after these alternatives proved ineffective, which exhibits a measured and cautious approach rather than intentional misconduct.

Accordingly, Defendants' Motion as to Plaintiffs' negligence claim is **GRANTED**.

    *3.   Negligent hiring, supervision, and retention*

22

Plaintiffs' Complaint asserts state law claims for negligent hiring, supervision, and retention.[59] Defendants argue that the state law claims as set out in the Complaint must be dismissed because they implicate Louisiana's discretionary immunity statute.[60]

Louisiana Revised Statue § 9:2798.1 provides that:

> Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

The provision, however, does not apply (1) to acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or (2) to acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct. La. R.S. 9:2798.1(C). Courts routinely dismiss claims of negligent hiring, training, and supervision against the state and its officials based on discretionary immunity, reasoning that the decisions made by state officials to hire, train, and supervise are discretionary – not operational – in nature. *See, e.g.*, *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005); *Skinner v. Ard*, No. 19-66, 2021 WL 388830, at *13 (M.D. La. Feb. 3, 2021).

Notably, Plaintiffs have not alleged in their Complaint any applicable laws or regulations that require law enforcement agencies to supervise and train their

---

[59] [Doc. No. 1, ¶ 26–29].
[60] [Doc. No. 36-1, p. 55].

officers in a specific manner. Nor do Plaintiffs attempt to remedy this deficiency by arguing for such in their Opposition. In any event, Louisiana case law establishes that hiring, supervision, and training is a discretionary act. *Smith v. Lafayette Parish Sheriff's Dep't*, 874 So. 2d 863, 868 (La. App. 3 Cir. 2004) (sheriff's "hiring/retention policy was a discretionary act" for purposes of immunity under La. Rev. Stat. 9:2798.1); *Hoffpauir v. Columbia Cas. Co.*, No.12-403, 2013 WL 5934699, at *12-13 (M.D. La. Nov. 5, 2013) ("[T]he hiring, training, and supervision policy of the Livingston Parish Sheriff's Department is a discretionary function."); *Skinner*, 519 F. Supp. 3d at 321 (sheriff's "duties to train, supervise, and hire are not prescribed by law or regulation, and these duties are grounded in policy considerations.")

Plaintiffs have not met their burden to establish that any exception to La. R.S. 9:2798.1 is applicable. As asserted by Defendants, the pleadings contain no allegations regarding prior instances of Officer Mouton employing lethal force. Moreover, Plaintiffs fail to provide specific factual support demonstrating any deficiencies by LCG in training, supervision, or hiring practices. Even if Officer Mouton was negligent, the Court cannot say that this conduct was intentional, malicious, reckless, or anything else that would fall within La. R.S. 9:2798.1(C)(2). Without more, Plaintiffs have failed to demonstrate that LCG is not entitled to immunity under La. R.S. 9:2798.1 for their claims of negligent hiring, supervision, and retention.

Thus, Defendants' Motion on these issues is **GRANTED**.

    4. *Vicarious liability*

24

Plaintiffs seemingly make a claim against LCG based on vicarious liability.[61] Defendants argue that there is no basis for liability against any LCG employee because Officer Doe was dismissed, Officer Mouton used objectively reasonable force against Francis, and Morrison's detention was based on probable cause.[62] The Court agrees.

For the reasons stated throughout this Ruling, Defendants' Motion regarding Plaintiffs state law vicarious liability claims is **GRANTED**.

III.  **CONCLUSION**

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion [Doc. No. 36] is **GRANTED**, in its entirety, and all of Plaintiffs' claims against Defendants are **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 10th day of September, 2025.

Terry A. Doughty
United States District Judge

---

[61] [Doc. No. 1, ¶ 28].
[62] [Doc. No. 36-1, p. 57].